## Orford v. Benton.

A settlement of a pauper will not be gained by the possession of property, and the payment of taxes upon it, unless it is shown that the pauper was possessed of real estate to the value of $150 for the term of four years, or was possessed of personal estate of the value $250 for the same term, and in either case paid all taxes assessed on his poll and estate for said term. It is not enough that he was possessed of sufficient real estate for a part of the term, and of sufficient personal estate for the residue of the term.

There is no curtesy of a reversion or remainder after an estate for life.

The interest of a husband in the reversionary estate of the wife is not real estate within the statutes relating to the settlement of paupers.

A highway tax will not be rendered invalid because the selectmen, for convenience, have divided the amount, and placed it in two columns.

ASSUMPSIT. The action was brought to recover for the support of one D. Bailey, and his wife and minor child. Said Bailey resided in Benton from February, 1841, to November, 1846; and it was a question whether he gained a settlement there in the fourth mode provided by chapter 65 of the Revised Statutes.

From February, 1841, to November, 1843, said Bailey carried on a lot of land, which had been conveyed to his wife by Elisha Ford, her father, by warranty deed in common form, for a consideration of $350. The evidence tended to show that this consideration was paid by discharging a debt which said Ford

Orford v. Benton.

owed Mrs. Bailey, for services before her marriage, amounting to $175, and by said Bailey and wife giving a bond to said Ford to support and take care of a daughter of said Ford during her life. In the season of 1841 Bailey built a house and barn on said premises, and moved into the same about November, 1841, where they lived until November, 1843, when they, Bailey and wife, made an exchange with Caleb Ford, son of Elisha, who had been living at home and taking care of his parents, obtaining the old Ford farm, so called, and the stock, farming tools, &c., on the same, and giving in exchange their farm, and also agreeing to support and take care of said Elisha Ford and wife during their lives. The old Ford farm was deeded to Mrs. Bailey, like the other, and Bailey and wife gave back to Elisha Ford and wife a life-lease of the farm. Bailey and wife then moved upon the premises, and into the same house with said Ford and wife, carried on the farm, managed the personal property, and took care of and supported the Fords, until November, 1846. During this time the farm and stock were taxed to Bailey, and Ford and his wife lived till after November, 1846.

The defendant objected, that from the time of giving the life-lease to the Fords, November 11, 1843, said Bailey had not such an interest in the real estate as the statute (Rev. Stat., chap. 65, sec. 4,) contemplates. But the court overruled the objection, and instructed the jury that said Bailey had such an interest in this real estate, during the continuance of this life-lease to the Fords, as the statute intends, and that the only question was as to the value of such interest, whether or not it was worth $150, which fact was submitted to the jury.

The court instructed the jury that Bailey must have had real estate of the value of $150 during four years, or personal estate of the value of $250 during four years; and that if he had real estate of the value of $150 during two years only, and had personal estate of the value of $250 for the other two years, he had not such an estate as could entitle him to a settlement, by

Orford *v.* Benton.

paying all taxes legally assessed thereon for four years in succession.

Payment of the highway tax for the year 1844, assessed upon said Bailey, was disputed, and evidence was introduced on both sides in relation to it. The plaintiff also contended that the assessment of this highway tax by Benton was illegal. It appeared that at the annual meeting in Benton, in March, 1844, the following proceedings were had, as shown by the record of the town-clerk, who is since deceased:

" *Voted,* To raise four hundred dollars, to build and repair highways."

" Moved to raise one hundred dollars, to be expended on the North and South road. Voted in the negative."

" Moved to take one hundred dollars of the highway money, and expend the same on the North and South road, to be laid out under the direction of the selectmen, who are to notify the several highway surveyors of the time and place to work, who are to call on each individual named in his highway list."

The record did not show what disposition was made of the last motion. The plaintiff offered to show that it was carried in the affirmative, and contended that, after that vote, the selectmen could not legally assess a highway tax of more than $300, and 5 per cent. thereon; but the court ruled that the selectmen, notwithstanding the passage of such vote, might legally assess a highway tax of $400, and 5 per cent. thereon.

The selectmen, in making up the resident tax-list for that year, divided the highway taxes into two columns, the first of which was headed "highway tax," and amounted to $288.56; the second was headed " North and South road tax," and amounted to $97.40. In the non-resident list all the highway tax was placed in one column, headed "highway tax," and amounted to $31.64, and no tax was laid on non-residents under the head of "North and South road." It thus appearing that more than $315 had been assessed for the highway tax, the plaintiff objected that the assessment was illegal; but the objection was overruled by the court.

The plaintiff also objected that no assessment had been made upon non-residents for any part of the " North and South road" tax, but the court overruled the objection.

The defendant introduced the selectmen's book and the town-clerk's book, in both of which were recorded what purported to be the invoice and assessment for the year 1844. The invoice of D. Bailey, upon the selectmen's book, was, among other things, for thirteen sheep, but on the town-clerk's book it was fourteen sheep instead of thirteen. The plaintiff objected that the assessment was illegal, because of such variance, but the objection was overruled. The plaintiff also objected that it was not shown that the invoice and assessment, or a copy thereof, was left with the town-clerk prior to the first day of July, as required by law, and that it was not shown that the same were recorded by him; the two records not being alike, as before stated. But it not appearing that there was any other variance between the records upon the two books than that above stated, the court overruled the objection.

Exceptions were taken to these rulings, and a verdict being returned for the defendant, he filed his bill of exceptions, which is allowed.

*C. R. Morrison,* for the plaintiff.

1. Under the instructions of the court a person might every year, for many years in succession, be a resident owner of a large amount of taxable property, and pay all taxes duly assessed, without gaining a settlement. The ruling is contrary both to the letter and the spirit of the statute, and is unsupported by authority.

2. The votes must all be taken together, and, thus considered, the selectmen had no right to assess more than $300 as a highway tax. They did assess $320.20.

3. If they might have disregarded the last vote, they did not do so. They considered that they ought to lay a highway tax of $300, and a North and South road tax of $100; but in

laying the former they made an over-assessment, which vitiates the tax. *Huse* v. *Merriam*, 2 Greenl. 375.

Bailey was assessed also upon the North and South road tax, but non-residents were left out. Treating what the selectmen did as an assessment of a $400 dollar tax, the residents were assessed beyond their proportion. The assessment was not equal. Rev. Stat., chap. 43, sec. 1.

4. The law requires the number of sheep to be set down in the invoice upon the selectmen's book. Rev. Stat., chap. 42, sec. 3. It also requires that the invoice and assessment, or a copy thereof, shall, prior to the first day of July, be left with the town-clerk, and recorded by him. Rev. Stat., chap. 43, sec. 6. The two books do not agree.

It was objected that these requirements were not shown to have been complied with. The objection should have been sustained, for the only evidence to show that the statute had been followed, proved that it had not been. If the town-clerk did his duty, the selectmen did not do theirs. If they did theirs, he did not do his. It does not appear which was performed, if either. Both must have been performed. *Cardigan* v. *Page*, 6 N. H. 192 ; *Blossom* v. *Conner*, 14 Mass. 177 ; *Thayer* v. *Stearns*, 1 Pick. 482 ; *Thurston* v. *Little*, 3 Mass. 427.

*H. Hibbard*, for the defendant.

1. The instruction that the pauper must have had estate, exclusively real or exclusively personal, for the time and of the value prescribed by law, was in accordance with the spirit of the statute as well as with its terms, and the construction it has uniformly received in practice. Rev. Stat., chap. 65, sec. 1, clause 4. In all our reported cases the settlement of the pauper was sought to be established upon the ground of the possession of one kind of property or the other, exclusively. The reason no case is found directly prescribing this construction, is supposed to be that it has been regarded as too well settled to be questioned.

The statute being one of settlement, imposing burdens upon

the public, its construction should be strict, and in favor of the town upon which the burden is sought to be imposed. The party seeking benefit from it must bring himself clearly within its provisions. Dwanis on Stat., p. 646, 7, 8; *Springfield* v. *Enfield*, 30 N. H. (10 Foster) 74, and cases cited.

It is desirable for general reasons that the interpretation so long settled and acted upon should not be disturbed.

2. The highway tax was legally assessed. There was but one vote to raise money. That vote, with the "overlay" allowed by the statute, authorized the assessment of $420.00; a larger sum than was in fact assessed. Rev. Stat., chap. 43, sec. 4.

The motion, which does not appear to have been adopted, was no vote. The record could not be explained *aliunde*, as was proposed by the plaintiff, to show that the motion was carried. *Pickering* v. *Pickering*, 9 N. H. 178; *Taylor* v. *Henry*, 2 Pick. 397. But if the motion had been adopted, it would be immaterial in this case. It would have been merely directory as to the use to be made of a portion of the money already legally raised. It is not necessary to inquire whether it would have been binding upon the selectmen. They had by law the power within their discretion to make the same use of any portion of the money raised; Rev. Stat., chap. 55, secs. 11, 16; nor can the manner in which the selectmen entitled the several columns into which they divided the tax, affect the validity of the assessment. The record shows that the amount and object of the taxes raised and assessed were legal. Neither in the aggregate, nor in any particular instance, was the proper sum exceeded. No one was aggrieved, and no one has cause of complaint.

3. The clerical error in copying the invoice did not affect the tax. The invoice and assessment were left with the town-clerk, and recorded by him prior to the first day of July. There was a substantial compliance with the statute requirement. But had there been an entire omission in this particular, it would have been immaterial, the statute being merely directory as to taxes of this description. *Scammon* v. *Scammon*, 28 N. H. (8 Foster) 419–31.

Orford *v.* Benton.

BELL, J.    The provision of the statutes upon which this question arises is as follows :  " Any person, of the age of twenty-one years, having real estate of the value of one hundred and fifty dollars, or personal estate of the value of two hundred and fifty dollars, in the town where he dwells and has his home, and paying all taxes duly assessed on him and his estate for four years in succession, shall thereby gain a settlement in such town."

This language is equivocal.  It may mean, as the defendants contend, that if a party has real estate for four years, or if he has personal estate for four years, of the required value, he shall gain a settlement.    It must be exclusively real estate for the whole time, or exclusively personal.

Or it may mean that the party who has either real or personal estate for four years, to the amount prescribed, shall acquire a settlement, as the plaintiffs contend ; thus making it a matter immaterial whether the property is real or personal, provided he has at all times during four yearseither real estate worth $150 or personal worth $250.

Either of these meanings may be given to the expressions used, without doing violence to the rules or usages of the language ; and we have been unable to · discover in the passage itself any satisfactory reason which forbids the adoption of either signification.

We have examined all the reported decisions in cases of this class, and have been unable to discover any expression from which it can be inferred that any doubt had ever been entertained upon the point, or that any impressions rested on the minds of the court either one way or the other in regard to it.

We are, therefore, compelled to adopt one of these interpretations upon such general grounds as occur to us ; and we are of the opinion that the construction adopted by the learned judge who presided on the trial, was correct, because the language of statutes is usually to be construed in its natural and ordinary meaning.    And we think the first impression of all who should read this statute, whether professionally or otherwise educated, would be, that, to gain a settlement in this mode, a

person must have had the required amount of real estate for the whole term of four years, or he must have had the required amount of personal estate for the same period. It would be only after the attention has been drawn to the point, and the force of the expression considered, that it would appear that the statute in terms might also apply to the case, where the party has not had either real or personal estate exclusively for the whole time, but has at all times had either the one or the other, to the prescribed amount. The court seem to us to have adopted the ordinary and natural meaning; that which is most obvious, and first strikes the mind. This we think has been the general impression of the profession, and it is sustained by the fact that the courts have always held that there are no equities between towns in regard to the settlement of paupers, and the statutes on the subject are to be strictly construed; that is, they are not to be extended beyond their natural meaning by any freedom of interpretation, or by any arguments drawn from the consideration that cases not necessarily embraced by the terms of the statute, yet seem to fall within the same reason. *Springfield* v. *Enfield*, 30 N. H. (10 Foster) 75.

2. It appeared that the title of Bailey, the pauper, to the real estate upon which the alleged settlement in Benton was founded, was the right he had, as husband, to the land of his wife, which was, during the time in question, subject to a lease to his wife's father. The court instructed the jury that this interest was real estate, within the meaning of the statute regarding the settlement of paupers, and that the only question was if its value amounted to $150.

The wife was seized of the reversion after a life estate. The husband, if he had any interest, was tenant by the curtesy. Lord *Coke* says a man shall not be tenant of the curtesy of a remainder or reversion expectant upon an estate of freehold, unless the particular estate be determined during the coverture. 1 Inst. 29, a; 1 Cruise Dig. 157, T. V., chap. II., sec. 23; 4 Kent's Com. 29; 2 Bla. Com. 127. Bailey had, therefore, no estate in this farm; no real estate, by virtue of which he

could have acquired a settlement in Benton. But this error was in favor of the plaintiff, and he cannot take exception on this account. The point, however, is probably decisive of the action.

3. After the vote to raise $400 to build and repair highways, it was moved to take $100 of the highway money, and expend the same on the North and South road, to be laid out under the direction of the selectmen, who are to notify the highway surveyors of the time and place to work, who are to call on each individual named in their highway lists. It is asserted that this motion was passed by the town, though the record does not show the fact; and if so, it rendered the highway tax, which was for the whole $400, illegal.

But this does not seem to be so. The motion clearly contemplates that the $100 to be laid out on the North and South road should be a part of the highway tax; and it can make no difference that the selectmen for convenience divided the highway tax, so far as residents were concerned, into two parts. It was still all one highway tax, to be worked out under the highway surveyors.

The record does not show that any vote was passed on the subject of the motion. It is clear that parol evidence could not be admitted to show such vote. *Pickering* v. *Pickering*, 11 N. H. 144. As no motion to amend the record was made, it is not necessary to consider whether it could have been amended.

4. It is objected that the statute, requiring a copy of the invoice and assessment to be left with the town-clerk, was not complied with, by reason of an error in the number of sheep in the invoice. But we have held that in general this statute is merely directory, and the validity of the tax does not depend upon it. *Scammon* v. *Scammon*, 28 N. H. (8 Foster) 431. If an error of a single figure in the record would be sufficient to render illegal the entire taxes of the town, or even of the individual, it would furnish a strong argument in support of the decision last referred to.

These rulings of the court being sustained, there must be

*Judgment on the verdict.*